*Jessica SOMBRERO*
Petitioner
*vs.*
*Honorable Angela KEAHNIE-SANFORD*
*Kayenta Family Court Judge*
Respondent
*and*
*Sandoval Crank*
Respondent-Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-41-02

September 15, 2003

Judy R. Apachee, Esq., Flagstaff, Arizona, for Petitioner.

Honorable Angela Keahnie-Sanford, Respondent, on her own behalf.

Before YAZZIE, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by YAZZIE, Chief Justice.

Petitioner Jessica Sombrero (Sombrero) seeks a Writ of Prohibition against the Kayenta Family Court to prevent enforcement of the court's orders for child visitation, fines, attorney fees and contempt entered in Sombrero's domestic violence proceeding under the Domestic Abuse Protection Act, 9 N.N.C. §1651 *et seq.* (DAPA).

We grant the petition because custody, visitation, and child support should not be decided without a determination of paternity even where, as here, the parties stipulate without a full evidentiary hearing.

## I. PROCEDURAL HISTORY

Sombrero sought a temporary protection order (TPO) in the family court on June 7, 2001, alleging that Respondent/Real Party in Interest Sandoval Crank (Crank) was verbally abusive and had the potential to become physically abusive. In addition, Sombrero requested that (1) the family court give temporary custody of

the parties' minor child to her, (2) Crank be ordered not to have any contact with Sombrero or the child until the court's determination on the issue, and (3) Crank pay child and spousal support. The parties are not married. The family court issued a TPO the same day giving Sombrero temporary physical custody of the child and denying Crank visitation.

At the June 22, 2001 hearing, the court entered the parties' stipulated mutual domestic abuse protection order (SMDAPO) and ordered Crank to pay monthly child support. Following a home study, the Navajo Nation Division of Social Services recommended that Sombrero be given primary care of the child, Crank be given unlimited visitation rights on his non-work days, and child support be paid by Crank of $214 per week. No findings concerning Crank's paternity were made. The court presumed Crank to be the father because Sombrero alleged in her initial filing that Crank was the natural father as the basis for her claim to child support. The record shows Crank did not contest being the father of the minor child. The court did not make a determination of paternity with this information.

A final hearing was held October 31, 2001 at which time counsel for both parties stipulated to continue the SMDAPO for five years, including joint custody, with Sombrero as the primary custodian of the child and Crank having unlimited visitation. The order further obligated Crank to child support of $690 monthly. Crank's visitation rights required 24-hour advance notice with visits no longer than five hours, depending on the need of the child, and no overnight visitation until the child is no longer breastfeeding.

On April 11, 2002, Crank filed a motion for an order to show cause, alleging that Sombrero violated the amended SMDAPO by preventing visitation. The motion requested that (1) custody be granted to Crank because Sombrero was "attempting to destroy the father and child relationship," (2) the court modify the monthly child support obligation because Crank was no longer employed, (3) Crank be allowed to claim the child for income tax purposes because he provided more than 50% of the child's support, and (4) Crank be awarded attorney fees because he could no longer afford an attorney. Sombrero responded that custody and modification of child support were not properly before the court and that she should not be held in contempt for failing to permit visitation which was granted without considering the best interests of the child. The family court fined Sombrero $100, ordered her to pay Crank's $500 attorney fees and $350 in expenses, and affirmed the prior orders allowing visitation.

Crank filed a second motion for an order to show cause on July 23, 2002, again citing Sombrero's unwillingness to allow visitation. The family court imposed an additional fine of $250 and awarded attorney fees of $500 against Sombrero to be paid within two months; visitations were ordered and scheduled; and it was made clear that a bench warrant would be issued if Sombrero prevented visitation.

Sombrero requested a writ of prohibition based upon the family court's failure to make a legal determination of paternity, and argued that DAPA does not give the family court jurisdiction to establish paternity in a domestic abuse protection proceeding.

We must decide whether the trial court exceeded its jurisdiction in ordering custody, visitation and child support in a DAPA proceeding, without first establishing paternity.

## II. LEGAL DETERMINATION OF PATERNITY

The court has the responsibility for making a legal determination of paternity. In *Davis v. Crownpoint Family Court,* 8 Nav. R. 279 (Nav. Sup. Ct. 2003), we held that a legal determination of paternity is required before granting child custody to a putative father. *Id.* at 286. The same rule is applicable in this case. The family court relied upon the stipulation of the parties and the social worker's report without making an independent inquiry and determination of paternity. When the social worker recommends visitation or custody, it is not a legal determination of paternity.

Sombrero argues that paternity cannot be established in a DAPA action. We disagree. In *Davis,* we stated that (1) a putative father has no standing to request custody or visitation until a legal determination of paternity is made, (2) in the best interests of the child, a further inquiry must be made to ensure a wholesome child-parent relationship exists and (3) the legal determination of paternity can be made in a DAPA proceeding, even at the *ex parte* stage.[1] The only issues on appeal are visitation and child custody. We therefore do not address child support. The family court erred when it granted custody and visitation without first making the jurisdictional determination concerning Crank's paternity. There may be situations that call for court to order interim arrangements. For example, a putative father may have dispositive blood test results on which the court can rule.

The case must be remanded to the family court. Based on the evidence presented on remand, the court should determine paternity before visitation and custody are considered. Appointment of a guardian *ad litem* may be an option to ensure the child's interests are protected. We hold the family court erred by acting without jurisdiction in ordering custody and visitation before explicitly determining paternity. Where there is a dispute on paternity, genetic testing has been utilized. Sombrero should not be required to pay for further proceedings necessary to remedy the situation. In this case, if Crank is willing to admit paternity but Sombrero insists on an evidentiary hearing or genetic testing, the family court may allocate costs in its discretion. The best interests of children

[1] The court may make a presumptive determination of paternity based on sufficient findings, but the mother may challenge the presumption at a subsequent hearing. In the meantime, the court may enter interim and temporary orders for visitation and custody based on the presumptive determination.

command that the temporary, interim child support should remain intact.

Accordingly, the Writ of Prohibition is GRANTED. All orders of the family court finding Sombrero in contempt and assessing fines, and awarding Crank attorney fees and costs are hereby VACATED. The matter is remanded to the family court for further proceedings consistent with this Opinion.